

ENTERED
06/26/2019

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE: §
DARIAN BUTLER § CASE NO: 19-30007
Debtor(s) §
 § CHAPTER 13

## MEMORANDUM OPINION

On October 10, 2018, Robert W. Berleth and Synergy Law, LLC entered into an agreement under which Synergy would refer Texas bankruptcy matters to Mr. Berleth. Synergy was responsible for the preparation and filing of the bankruptcy petitions, while Berleth was paid a flat fee to make court appearances. Pursuant to this agreement, Mr. Berleth filed bankruptcy petitions for three individuals in the Southern District of Texas within the span of three days. Those petitions were filed on behalf of Afaf Ali Ahmad, Darian Butler, and Leonel Botello.

In January 2019, Mr. Berleth was involved in a fourth case—a chapter 13 bankruptcy filed by Sean Dean Cavness in Corpus Christi, Texas. Prior to Mr. Berleth's involvement, Mr. Cavness and Scott M. Marinelli, who at the time was part-owner of Synergy, agreed to settle a dispute regarding the improper filing of Mr. Cavness's bankruptcy case for $15,000.00. Synergy claims Mr. Berleth's role was limited to concluding the settlement negotiations initiated by Mr. Marinelli. Mr. Berleth alleges that he decided to renegotiate the settlement amount although this was not within the scope of his role. He alleges that he did so to ingratiate himself to his client, Synergy.

Attorney Charles Newton represented Mr. Cavness in settlement negotiations with Synergy. Mr. Newton alleges that he met with Mr. Berleth regarding the settlement. Mr. Newton alleges that during settlement negotiations, Mr. Berleth offered to refer clients from Synergy to Mr. Newton, if Mr. Newton would agree to settle Mr. Cavness's dispute for less than

$15,000.00. In light of Mr. Newton's allegations, the Court must determine whether its mandatory reporting duty under 18 U.S.C. § 3057(a) has been triggered.

For the reasons set forth below, the Court has a mandatory duty to report Robert W. Berleth pursuant to 18 U.S.C. § 3057(a) for Berleth's apparent violation of 18 U.S.C. § 152(6).

## Background

Robert W. Berleth is an attorney with Berleth & Associates, PLLC. (ECF No. 70 at 2). Synergy Law, LLC is a debt relief agency that hires licensed attorneys to file bankruptcy cases across the nation. On October 10, 2018, Berleth & Associates and Synergy Law, LLC entered into an agreement under which Robert Berleth would serve as "Of Counsel" for Synergy in the Southern District of Texas.[1] (ECF No. 70 at 2). Pursuant to this agreement, Mr. Berleth filed bankruptcy petitions for three of Synergy's clients within the span of three days in the Southern District of Texas.

### I. January 15, 2019 Hearing

On December 31, 2018, Afaf Ali Ahmad filed chapter 11 bankruptcy. (Case No. 18-37392, ECF No. 1). As detailed below, Ms. Ahmad's petition and schedules failed to meet even minimum standards of competency. On January 1, 2019, Darian Butler filed chapter 13 bankruptcy. (*See* ECF No. 1). Mr. Butler's petition presented similar issues. On January 2, 2019, Leonel Botello filed chapter 13 bankruptcy. (Case No. 19-30032, ECF No. 1).[2] Robert W. Berleth was the attorney of record for all three petition filings.

On January 15, 2019, the Court held a status conference to address Ms. Ahmad's and Mr. Butler's deficient bankruptcy petitions. (*See* ECF No. 55). The Court initially addressed Ms.

---

[1] Berleth & Synergy's agreement terminated sometime after January 15, 2019. (Berleth Deposition at 7–8).

[2] Mr. Botello's chapter 13 bankruptcy was assigned to Judge Norman in the Southern District of Texas. (ECF No. 58 at 5).

Ahmad's case. (ECF No. 55 at 1). From the beginning, Mr. Berleth appeared confused. When questioned regarding the inadequacy of the petitions filed, Mr. Berleth stated that he "was specifically retained to [file] the chapter 11 bankruptcy for San Jacinto Ventures"—Ms. Ahmad's company—failing to realize he had filed a petition in Ms. Ahmad's name instead. (ECF No. 55 at 4–5). Ms. Ahmad's schedules were riddled with patently false statements, which included:

   i. Schedule A/B failed to describe certain real property Ms. Ahmad owned;

   ii. Schedule A/B represented that Ms. Ahmad did not own any household goods and furnishings, clothes, or vehicles; and

   iii. Schedule J listed no expenses for housing, food, utilities, or anything else.

(Case No. 18-37392, *see* ECF No. 1).

Mr. Butler's petition and schedules were also obviously wrong:

   i. Schedule A/B represented that Mr. Butler did not own any household goods and furnishings, electronics, clothes, pets, or vehicles;

   ii. Schedule J listed pet and car expenses directly contradicting the representations made in Schedule A/B;

   iii. Schedule I indicated that Mr. Butler was employed, yet failed to report income; and

   iv. The chapter 13 plan proposed to satisfy Mr. Butler's payment obligations with six monthly payments of $1.00.

(ECF No. 55 at 11–12).

Mr. Berleth agreed that the petition in Ms. Ahmad's case was incorrectly filed and that the schedules in Mr. Butler's case were grossly deficient. He claimed that the errors were a product of the need to prevent foreclosures in both cases. (ECF No. 55 at 6, 10). Mr. Berleth initially stated:

> I was out of town and *both of these clients approached me* for a bankruptcy filing to stay a foreclosure on I believe the second or third of January, and so *my office staff created these documents.* I had very limited capability to review them. I was actually reviewing them on my telephone. I've since been able to kind of pick up the mantle on those . . . .

(ECF No. 55 at 4) (emphasis added).

The Court noted that Mr. Butler's statement of financial affairs listed "Synergy Law." (ECF No. 55 at 12). When the Court asked Mr. Berleth to explain Synergy's involvement, Mr. Berleth responded that "Synergy Law [was] a mistake from the beginning" and alleged that Synergy had referred Mr. Butler's case to him. (ECF No. 55 at 12). Mr. Berleth admitted that although he quickly reviewed and signed the documents prior to their filing, the schedules filed in Mr. Butler's case were instead prepared by Synergy Law, LLC. (ECF No. 55 at 13). Mr. Berleth further disclosed his agreement with Synergy, under which Synergy would prepare paperwork and Mr. Berleth would receive a flat rate of $275.00 as an "appearance fee" for the entire case. (ECF No. 55 at 15–16). At the time, Mr. Berleth indicated that Mr. Butler's case was one of two cases filed in the Southern District of Texas, both of which Synergy had referred to him. (ECF No. 55 at 14). Mr. Berleth represented that Ms. Ahmad's case was not one of the referred cases; rather "Mr. Twill, or San Jacinto Ventures . . . contacted [him] directly." (ECF No. 55 at 14).

Mr. Berleth indicated that Synergy had requested that he work on a separate matter, also before the Court—Sean Cavness's chapter 13 bankruptcy filed in Corpus Christi—but noted that he was "not the appearance counsel and not affiliated with [the case] at th[at] point." (ECF No. 55 at 20). When questioned over the scope of his involvement in Mr. Cavness's bankruptcy matter, Mr. Berleth indicated that he was "not entirely sure;" he had "been called in after the battle to see what [he could] salvage." (ECF No. 55 at 20). Mr. Berleth reiterated, however, that

he was "not going to be the appearance of counsel or the counsel of record in [Mr. Cavness's] case." (ECF No. 55 at 21). At the conclusion of the hearing, the Court set a status conference on Mr. Butler's amended petition and Synergy's involvement in Mr. Butler's chapter 13 bankruptcy. (ECF No. 55 at 22).

### II. February 1, 2019 Hearing

On February 1, 2019, the Court held a hearing in which Synergy Law, LLC was ordered to appear and explain its involvement in Mr. Butler's chapter 13 case. (*See* ECF No. 58). When discussing Mr. Butler and Ms. Ahmad's case, Mr. Berleth revealed:

> [T]hese petitions were filed while I was out of town on vacation. I, through ski goggles, reviewed them on my phone. Obviously, they were grossly deficient. That's on me, and I will stand for [these] deficient filings.

(ECF No. 58 at 5).

Mr. Berleth noted that Leonel Botello's chapter 13 bankruptcy, which was pending in front of Judge Norman at the time, was one of the two cases referred to him by Synergy Law. (ECF No. 58 at 5). Mr. Berleth stressed that both Mr. Butler's and Mr. Botello's chapter 13 bankruptcies were filed "not to stay foreclosure, but because they actually need[ed] bankruptcy protection in restructuring their finances," contradicting his statements at the first hearing where he cited imminent foreclosure as the reason for the inadequate filings in Mr. Butler's chapter 13 bankruptcy. (ECF No. 58 at 5).

At the hearing, Terrylle Blackstone, the Bankruptcy Department Director for Synergy Law, provided testimony regarding Synergy Law's client intake structure. (ECF No. 58 at 8). He indicated that Synergy obtained its clients through a separate marketing firm, which routes prospective client calls to Synergy. (ECF No. 58 at 20). Thereafter, Synergy's Intake Department assesses the client's case, and provides "several options," including filing

bankruptcy. (ECF No. 58 at 20–22). Mr. Blackstone stated that should a client choose to file bankruptcy, Synergy Law's Operations Department prepares the client's bankruptcy petition. (ECF No. 58 at 23). The Operations Department would then send the completed documents to Synergy's "Of Counsel" (presumably an attorney licensed in the state where the filing will occur), who then file the bankruptcy petition Synergy prepared under the attorney's name in the appropriate district. (ECF No. 58 at 9, 15). Mr. Blackstone further detailed that clients make payments directly to Synergy Law for their bankruptcy cases. (ECF No. 58 at 26–27). Synergy's clients were charged approximately $3,500.00, comprised of an initial retainer of $900.00 to $1,500.00 followed by recurring monthly payments for the balance. (ECF No. 58 at 27–28). Mr. Blackstone testified that none of the employees working in Synergy's Intake or Operations Departments are attorneys. (ECF No. 58 at 22).

While Mr. Blackstone testified as to Synergy's structure, he noted that Synergy did not refer Ms. Ahmad's chapter 11 bankruptcy to Mr. Berleth. (ECF No. 58 at 12). Mr. Berleth agreed, but stated that Synergy had prepared Ms. Ahmad's bankruptcy petition:

> Ahmad approached me. But he[3] approached me—like I said, I was on vacation—at the very last moment before the foreclosure, which I believe was scheduled for January 2nd, of the hotel in Abilene, as a purely logistics—at that point, I had been in contact with Mr. Marinelli, not realizing that he was no longer affiliated with Synergy. He represented to me that he would *have these petitions prepared and filed* and that they would be, you know, top-notch. Unfortunately, due to my own time on vacation, I didn't have time to properly prepare them and trusted Mr. Marinelli, which I think Mr. Blackstone is testifying here today is a grave mistake. And the Ahmad petition was grossly misleading.

---

[3] The Court is unsure why Mr. Berleth refers to Ms. Ahmad as "he." However, at the January 15, 2019 hearing, Mr. Berleth mentioned Mr. Twill who he stated is managing director of San Jacinto Ventures, Ms. Ahmad's company. (ECF No. 55 at 7). It is likely that Mr. Berleth is referring to Mr. Twill in this statement. In doing so, Mr. Berleth again fails to recognize that Ms. Ahmad's petition, not the company's petition, is before the Court.

(ECF No. 58 at 12–13) (emphasis added).[4]  While there appears to be consistency in the motivation for filing Ms. Ahmad's petition, Mr. Berleth's testimony contradicted his January 15, 2019 statement in which he testified that his staff prepared both Ms. Ahmad's and Mr. Butler's bankruptcy petitions.

Mr. Blackstone further testified that Synergy employees are privy to their "Of Counsel's" CM/ECF log in information, and when authorized to, will file petitions using the attorney's signature. (ECF No. 58 at 28).  Mr. Blackstone candidly admitted that he was not aware that the Southern District of Texas's local rules require a "wet signature" before a petition is filed. (ECF No. 58 at 25 (noting Synergy's clients often electronically sign their bankruptcy petitions given that the clients are often not in the same state as Synergy's office or do not have access to a fax machine)).  When asked who filed Mr. Butler's petition, Mr. Blackstone responded that he did not know who filed the petition; only that he himself had not. (ECF No. 58 at 24).  At the conclusion of Mr. Blackstone's testimony, the Court asked Mr. Berleth whether he knew who filed Mr. Butler's petition. (ECF No. 58 at 37).  Mr. Berleth responded, "Frankly, your Honor, I'm not sure.  I believe Synergy actually filed the Darian Butler petition[], your Honor." (ECF No. 58 at 37).

In light of Mr. Blackstone's testimony, the Court set a hearing to determine: (i) whether Synergy Law, LLC should be barred from continuing to practice law in the state of Texas; and (ii) whether Robert W. Berleth's electronic filing privileges should be suspended for his breach, involving the filing of petitions without signatures and authorizing others to file on his behalf. (ECF No. 58 at 37).

---

[4] In his deposition, Mr. Berleth states that Synergy "only used [his] ECF number … once or twice, and it was specifically on [the] Darian Butler case and one other . . . I believe it was [B]otello . . . in the Southern District of Texas." (Berleth Deposition at 68).

### III. February 4, 2019 Hearing

On February 4, 2019, the Court held a temporary restraining order hearing to address both Synergy's and Mr. Berleth's actions in Mr. Butler's bankruptcy. Mr. Berleth appeared as counsel for Mr. Butler. (ECF No. 57 at 3). The Court addressed the filing issues surrounding Ms. Ahmad's case, highlighted at the February 1, 2019 hearing. (ECF No. 57 at 12). Mr. Berleth stated that he did not know whether his staff or Synergy's staff prepared and filed Ms. Ahmad's petition:

> I know that my staff did a portion of it. They were using the Synergy software login. If that . . . so I don't know how much, if anything, Synergy staff did or my staff. . . .

(ECF No. 57 at 13).[5] Berleth's statements again directly contradicted his previous representations to the Court on February 1, 2019, in which he claimed that Mr. Marinelli assured Mr. Berleth that Ms. Ahmad's petition would be prepared and filed properly. (*See* ECF No. 58 at 12–13). Furthermore, Mr. Berleth acknowledged culpability for "the impropriety and the negligence" exhibited in Ms. Ahmad's and Mr. Butler's petitions:

> Whether it was intentional or not on my part, it was there. I absolutely will fall on that sword. It was my fault. I should not have given my login information to Mr. Scott Marinelli or to anyone from Synergy or to, you know, my church pastor or to Jesus Christ himself, if he asked.

(ECF No. 57 at 8).

Even with this acknowledgement, however, Mr. Berleth continuously failed to recognize the scope of the "impropriety and negligence" that his actions continued to demonstrate. Shortly after making the statement outlined above, Mr. Berleth switched roles and began acting on Synergy's behalf, calling Mr. Blackstone, Synergy's Bankruptcy Department Director, to testify

---

[5] During his deposition, Berleth claimed that Synergy filed two cases using his CM/ECF log in; however, he did not clarify which petitions he was referring to. (Berleth Deposition at 67 ("In the interim, Synergy had asked me to file—I believe it was—I think they started with three, but we only ended up filing two. They filed for me, which this [C]ourt is well aware of.")).

8 / 19

regarding the steps Synergy had taken in ceasing their operations throughout Texas in an attempt to repair Synergy's reputation with the Court. (ECF No. 57 at 9). In doing so, Mr. Berleth failed to realize he was simultaneously representing parties with adverse interests. (ECF No. 57 at 8–11, 13–15). In three separate instances, Mr. Berleth demonstrated his conflicting interest between Mr. Butler and Synergy:

> At this point, I too, have withdrawn from Synergy in representing; although, we did have some conversation this weekend about, you know, just kind of general legal advice of, you cannot, you know, practice law in the State of Texas unless you're an attorney. . . .
>
> I am in the process of withdrawing from Mr. Butler, your Honor. I did not realize that those were adverse positions . . .
>
> I am not sure that I'm here representing Synergy as their attorney, your Honor. I'm here representing as an of counsel agreement with Synergy . . . .

(ECF No. 57 at 8–11, 13–15). Mr. Berleth exhibited a fundamental lack of understanding of his ethical duties to the Court and his client.

Finally, in his attempt to "extricate himself from the issue," Mr. Berleth indicated that he planned to meet personally with Mr. Butler to have him sign his bankruptcy petition, providing for the missing "wet ink" signature as required by the Southern District of Texas's local rules. (ECF No. 57 at 15). Mr. Berleth, again, failed to comprehend the extent and severity of his actions—asking his client to perjure himself by backdating a document that did not previously include a wet signature. (ECF No. 57 at 17). At the conclusion of the hearing, the Court temporarily suspended Mr. Berleth's electronic filing privileges in the Southern District of Texas. (ECF No. 57 at 24–25).

### IV. February 20, 2019 Hearing

On February 20, 2019, the Court held a hearing to consider whether to terminate or extend Mr. Berleth's suspension of his electronic filing privileges in the Southern District of

Texas. (*See* ECF No. 81). Mr. Berleth appeared and was represented by counsel. On March 4, 2019, in accordance with their statements on the record, the United States Trustee, the Chapter 13 Trustee, and Mr. Berleth submitted a proposed Agreed Order, which formally sanctioned Mr. Berleth and restricted his practice in the Southern District of Texas. (ECF Nos. 70; 81 at 23–24). The U.S. Trustee, along with the Chapter 13 Trustee and Brad Parker, counsel for Synergy Law, filed a separate proposed Agreed Judgment Sanctioning Synergy Law, LLC. (Case No. 19-00302, ECF No. 5).

### V. Settlement Agreement Between Sean Cavness and Synergy Law

On March 3, 2019, Sean Dean Cavness filed an Objection to the proposed Agreed Order Sanctioning Synergy Law, LLC. (Case No. 19-00302, ECF No. 6). The Objection contended that on January 11, 2019, Mr. Berleth contacted one of Mr. Cavness's attorneys, Charles Newton, to discuss a settlement previously negotiated and approved by Scott Marinelli, owner and founder of Synergy Law. (Case No. 19-00302, ECF No. 6 at 9-10). According to the Objection, Mr. Berleth had indicated, in his initial contact with Mr. Newton, that Mr. Marinelli was no longer with Synergy Law and suggested a "working lunch meeting" to discuss the settlement. (Case No. 19-00302, ECF No. 6 at 10).

The Objection further alleged that on January 14, 2019, at Mr. Berleth's request, Mr. Newton met Mr. Berleth for lunch. (Case No. 19-00302, ECF No. 6 at 10). During the course of the lunch meeting, Mr. Berleth stated that Synergy Law was repudiating the settlement it had reached with Mr. Cavness. (Case No. 19-00302, ECF No. 6 at 11). The Objection claimed that Mr. Berleth made the following proposal:

> That Synergy Law files approximately 50 bankruptcy cases a month in the State of Texas, and if counsel would agree to no longer pursue Mr. Cavness's matter that Synergy would refer all of its automatic stay and discharge injunction work in

>Texas to Charles Newton & Associates, which could be, in Mr. Berleth's view, substantial.

(Case No. 19-00302, ECF No. 6 at 10). The Objection notes that Mr. Newton rejected Mr. Berleth's offer. (Case No. 19-00302, ECF No. 6 at 10).

On March 5, 2019, the Court held a hearing to address the allegations in the Objection. (Case No. 19-00302, *see* ECF No. 14). Mr. Newton, who appeared on behalf of Mr. Cavness, testified that the allegations against Mr. Berleth in the Objection were truthful. (Case No. 19-00302, ECF No. 14 at 16). Mr. Newton added that Mr. Berleth made the same offer—and Mr. Newton refused—twice over of the course of their meeting on January 14, 2019. (Case No. 19-00302, ECF No. 14 at 17). In light of Mr. Cavness's Objection and Mr. Newton's testimony, the Court issued a Show Cause Order on March 6, 2019, to determine whether the Court was compelled under 18 U.S.C. § 3057(a) to issue a criminal referral to the United States Attorney and Federal Bureau of Investigation based on Mr. Berleth's alleged bribe to Mr. Newton.

On May 22, 2019, Mr. Cavness, Synergy, and Mr. Berleth, through counsel, filed a Joint Agreed Response to the Show Cause Order. (*See* ECF No. 25). The Agreed Response stipulated to certain facts that occurred during the January 14, 2019 meeting between Mr. Newton and Mr. Berleth:

> i. Prior to the meeting, Mr. Newton and Synergy's attorney, Scott Marinelli, were negotiating a settlement agreement in Mr. Cavness's case.
>
> ii. Sometime during those negotiations, Mr. Marinelli "became unavailable to consummate the proposed settlement agreement."
>
> iii. Although Synergy contacted Mr. Berleth with the intention that he complete settlement negotiations in Mr. Cavness's case, Synergy was not aware that Mr. Berleth set up the settlement meeting with Mr. Newton.

    iv.    "At the business luncheon, Berleth believed he could get the best outcome for Synergy if he was able to arrive at an agreement for an amount of less than $15,000.00 as a zealous advocate[6] for his client."

    v.    "*As part of a balloon of sorts to get negotiations started toward an agreement to settle the Cavness case for an amount of less than $15,000.00*, Berleth made the statement to Newton that he believed Synergy files about 50 bankruptcy cases a month in the State of Texas. . . ."

    vi.    "Mr. Berleth stated that Synergy could refer all of the automatic stay and discharge injunction work to Newton's law firm. Again, Synergy neither knew nor authorized Berleth to make such a statement."

(Case No. 19-00302, ECF No. 25 at 2) (emphasis added).

The Agreed Response further addressed Mr. Berleth's culpability. Mr. Berleth asserted that although not an excuse, "he is inexperienced in complex bankruptcy matters." (Case No. 19-00302, ECF No. 25 at 3). Mr. Berleth also apologized to the Court in the Agreed Response:

> In making the suggestion to Newton[,] [Berleth] was oblivious to 18 U.S.C. § 152(6). It was not his intention to knowingly and fraudulently offer remuneration to Newton for not filing an adversary proceeding in the Cavness case.
>
> As stated, Newton did not accept or rely on the suggestion made, and *the goal was merely to make Cavness more amenable to accepting less than the $15,000.00* made the subject of the Proposed Settlement.

(Case No. 19-00302, ECF No. 25 at 2–3) (emphasis added).

On May 23, 2019, the Court held a show cause hearing to determine whether Mr. Newton's allegations and the Agreed Response triggered its mandatory referral obligations under 18 U.S.C. § 3057(a). Mr. Berleth's counsel argued that the Court's referral obligation had not been triggered, because he did not posses the requisite intent under 18 U.S.C. § 152(6). (*See*

---

[6] Mr. Berleth demonstrated his version of zealous advocacy during his deposition when he admitted:
> I did say that [Mr. Marinelli was incarcerated, and that David Maresca had cancer and was not expected to live]. That was part of the Cavness['s] settlement conversation in basically, what are you going [to] get? One guy's in jail; one guy's dead. The company [is] . . . what are you going to get? And *I think cancer has been an effective settlement tool* in other cases, not necessarily in this one. . . .

(Berleth Deposition at 31–32) (emphasis added).

May 23, 2019 Hearing at 1:43 p.m.). Mr. Berleth's counsel indicated that although Mr. Berleth told Mr. Newton that Synergy could refer automatic stay and injunction work to his firm, that the statement was made outside the context of their negotiations regarding Mr. Cavness's settlement. (May 23, 2019 Hearing at 1:44 p.m.). The Court noted that the Agreed Response contradicted this, instead stating that the referrals were offered as quid pro quo to reduce the settlement amount. (May 23, 2019 Hearing at 1:45 p.m.).

### VI. Berleth's Deposition

At the hearing, the U.S. Trustee moved to admit Mr. Berleth's deposition. (May 23, 2019 Hearing at 2:03 p.m.). After conferring with counsel, Mr. Berleth agreed to its admission. (May 23, 2019 Hearing at 2:09 p.m.). The deposition largely contradicts the representations in the Joint Agreed Response.

In his deposition, Mr. Berleth testified that Synergy instructed him to repudiate the proposed settlement agreement previously negotiated with Mr. Cavness. (Berleth Deposition at 14–15). However, he denied offering Mr. Newton discharge and injunction work in connection with Mr. Cavness's settlement:

> Going through it sentence by sentence, there was no—if Counsel would no longer pursue Mr. Cavness'[s] matter, there was no quid pro quo. There was a conversation about general networking of what is his law firm surrounded, what does he do, what's his business model for his law firm, and we had that conversation. But it had nothing to do with the current bankruptcies and nothing to do with Mr. Cavness.

(Berleth Deposition at 16). Mr. Berleth insisted that the Synergy case-referral offer was made at a time when they were no longer discussing Mr. Cavness's settlement:

> I did discuss the settlement of the Cavness['s] matter. We did discuss at a completely later time in the conversation about, again, just general networking. I offered my own services because typically my law firm is a collections law firm, so I offered to him, you know, hey, I know you've got some default judgments that are sitting there taking up drawer space. Send them over and maybe I can

> take a look and collect some of them, which is kind of what I do. But there was certainly no quid pro quo any more than he was trying to bribe me with work of collecting his default judgments.

(Berleth Deposition at 17–18). Mr. Berleth claimed he did not know or was not aware of Mr. Newton's "business model" prior to the meeting, and only after he learned about Mr. Newton's line of work, did he bring up the Synergy referrals:

> I did not realize that's the way [Mr. Newton] operated for the first half of the lunch. The first half of the lunch, I was merely negotiating with him as a settlement. Then we closed those settlement negotiations. . . . In a completely separate conversation, that's when I said, well, Synergy has lot of clients just by the numbers. Some of those clients are going to have their automatic stays violated. By the numbers, some of those clients are going to be here in Texas. . . .

(Berleth Deposition at 63–64). The statements made in the deposition largely mirror Mr. Berleth's argument at the May 23, 2019 hearing—although he suggested to Mr. Newton that Synergy filed cases in Texas, some of which could be referred to Mr. Newton's law firm, Mr. Berleth maintained that the statement was made after the settlement negotiations had ended. (May 23, 2019 Hearing at 1:47 pm.). That contention is directly contradicted by Mr. Berleth's joinder in the Agreed Response referenced above.

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy by General Order 2012-6.

## Analysis

Pursuant to 18 U.S.C. § 3057(a), a Court, "having reasonable grounds for believing that" a violation under chapter 9 of title 18 or other laws of the United States related to debtors "has been committed, or that an investigation should be had in connection therewith," has an obligation to report the facts and circumstances surrounding that case to the United States

Attorney. The issue before the Court is whether its duty under this statute has been triggered. In other words, whether the Court has reasonable grounds for believing that Berleth violated 18 U.S.C. § 152(6) as set forth in Mr. Cavness's Objection.

Section 152(6) states:

A person who:

> (6) knowingly and fraudulently gives, offers, receives, or attempts to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof for acting or forbearing to act in any case under title 11;

shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 152(6).

Mr. Berleth argues that his actions fail to establish the *mens rea* required under § 152(6). (ECF No. 25 at 3). Although he told Mr. Newton that Synergy could refer automatic stay and injunction work to Newton's law firm, Mr. Berleth contends the statement was made after settlement agreement negotiations had ended. (Berleth Deposition at 63–64). Further, at the time the statement was made, Mr. Berleth alleges he was unaware of § 152(6) due to his inexperience in bankruptcy law. (ECF No. 25 at 3). Mr. Berleth claims he did not make the statements with the intent that Mr. Newton agree to reduce the settlement agreement amount in reliance on case referrals, nor did Mr. Newton rely on those statements because he knew that Mr. Berleth lacked the authority to make the statements on Synergy's behalf.

I. **Whether Robert W. Berleth acted knowingly under § 152(6).**

"The statutory requirement that the underlying acts be performed 'knowingly' requires only that the act be voluntary and intentional and not that a person knows that he is breaking the law." *United States v. Zehrbach*, 47 F.3d 1252, 1262 (3d Cir. 2007) (citing *Cheek v. United States*, 498 U.S. 192, 199 (1991)). "The word 'knowingly' . . . means that the act was done

voluntarily and intentionally, not because of mistake or accident. . . ." *United States v. Hardy*, 412 F. App'x 450, 456 (5th Cir. 2011); *see also* 1 COLLIER ON BANKRUPTCY ¶ 7.02[1][a][iv][A] (Richard Levin & Henry J. Sommer eds., 16th ed.). Proof that the actor knew the action was illegal is not required. *Zehrbach*, 47 F.3d at 1261.

Mr. Berleth maintained that he did tell Mr. Newton "Synergy could refer all of the automatic stay and discharge injunction work to Newton's law firm." (ECF No. 25 at 2; Berleth Deposition at 63–64). He argues, however, that he did not realize that offering Synergy referrals at a settlement meeting violated § 152(6). The issue, of course, is whether the offer was intended "to make Cavness more amenable to accepting less than the $15,000.00 made the subject of the Proposed Settlement." (Case No. 19-00302, ECF No. 25 at 2–3). Although Mr. Berleth initially denied that was the purpose of the offer, he later withdrew that denial in his Joint Agreed Response.

Knowledge of an act's illegality is not required for an act to be made "knowingly." *Zehrbach*, 47 F.3d at 1262. All that is required is that the act be done voluntarily and intentionally. *Hardy*, 412 F. App'x at 456. Additionally, inexperience in "complex bankruptcy matters" does not negate the *mens rea* of Mr. Berleth's offer, so long as the offer was made voluntarily and intentionally. *See generally Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 383 (5th Cir. 2001) (noting that an actor's claim of innocent intent due to inexperience in financial affairs did not negate fraud on the court). It does not take any bankruptcy experience to understand that it is morally wrong to offer a bribe to opposing counsel.

Mr. Berleth has acknowledged that he voluntarily and intentionally offered Mr. Newton Synergy case referrals. Whether Mr. Berleth knew that suggesting Synergy could refer work to

Mr. Newton would violate § 152(6) is immaterial. Therefore, Mr. Berleth made those statements knowingly within the meaning of § 152(6).

**II. Whether Robert W. Berleth acted fraudulently under § 152(6).**

An act is done "fraudulently" when it is done "with intent to deceive or cheat." *Hardy*, 412 F. App'x at 456. Ordinarily, a fraudulent act is made "for the purpose of [] causing some financial loss to another or bringing about some financial gain to one's self." *Zehrbach*, 47 F.3d at 1259. Section 152 "has long been recognized as the Congress' attempt to criminalize all the possible methods by which a debtor or any other person may attempt to defeat the intent and effect of the Bankruptcy code;" therefore, it encompasses statements made "with intent to defraud the bankruptcy court." *Id*. at 587–588; *see* 1 COLLIER ON BANKRUPTCY ¶¶ 7.02[1][a][iv][b] (adding that the fraud must be directed to "parties affected by a bankruptcy case").

When analyzing whether an act is fraudulent within the meaning of the statue, courts allow the use of circumstantial evidence. *Zehrbach*, 47 F.3d at 1259 ("[I]ntent ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operations of the human mind, but you may infer a defendant's intent from the surrounding circumstances."). Circumstantial evidence of fraudulent intent can be inferred from the actor's "whole pattern of conduct," including facts and circumstances surrounding the actor's actions. *In re Reed*, 700 F.2d 986, 991 (5th Cir. 1983) (citing *Farmers Co-op Ass'n v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982) ("Fraudulent intent . . . may be established by circumstantial evidence, or by inferences drawn from a course of conduct.")).

Mr. Berleth has made multiple misrepresentations to the Court. He was not forthright regarding how Mr. Butler's and Ms. Ahmad's petitions were filed or by whom they were filed.

He admitted that he shared his CM/ECF login information with Synergy employees and abdicated his responsibility to file and review his clients' petitions. Admitting his faults does not absolve Mr. Berleth nor does it resolve his continual lack of candor with the Court. When viewed as a whole, Mr. Berleth exhibited dishonest character. Mr. Berleth's actions along with the stipulations set forth in the Agreed Response and their inconsistency with the statements in his deposition support a finding of fraudulent intent under § 152(6).

Mr. Berleth does not dispute that the purpose of the meeting between Mr. Berleth and Mr. Newton was to renegotiate the settlement amount to be paid by Synergy to Mr. Cavness. (ECF No. 25 at 79 ("[That was the intent with [Mr. Berleth] meeting with [Mr. Newton], for [Mr. Berleth] to reduce the amount of money, reduce [Synergy's] exposure.")). All parties agree that Synergy had requested that "[Mr.] Berleth make contact with Newton" for the purpose of "completing the Proposed Settlement." (ECF No. 25 at 2). Mr. Berleth further acknowledged that he believed the settlement amount was "outrageous" and asked Synergy for the opportunity to "fix" the situation. (ECF No. 25 at 78).

Although Mr. Berleth argues that the case referral offer was made at a time when the settlement agreement was no longer a discussion topic, the Agreed Response states that the purpose of the offer was to lower the $15,000 settlement amount. (Case No. 19-00302, ECF No. 25 at 2). Mr. Berleth acknowledges that in making the suggestion, "the goal was [] to make Cavness more amenable to accepting less than the $15,000.00 . . . ." (ECF No. 25 at 4). He claims, however, that because Mr. Newton did not rely nor accept the suggestion, Mr. Berleth's actions do not fall within § 152(6). Mr. Berleth fails to recognize that reliance is not an element of the statute. *See Zehrbach*, 47 F.3d at 1258 (listing § 152(6)'s elements). Mr. Berleth's statement to Mr. Newton, made during a meeting in which negotiations took place for the

purpose of reducing a settlement agreement amount, was an offer to induce an action or forbearance on the part of Mr. Newton in violation of § 152(6), regardless of Mr. Newton's state of mind.

Mr. Berleth claims that his zealous advocacy for his client drove him to make those statements. He purports there was no intent to defraud the Court, but merely to gain the most favorable outcome for his client. A person's "good faith belief in the lawfulness of his conduct is not a defense to bankruptcy fraud." *Zehrbach*, 47 F.3d at 1262. The statement was made to procure a favorable outcome for his client. One would assume that is the purpose of most bribery. The offer was fraudulent because it sought financial gain at Mr. Cavness's expense.

The Court has reasonable grounds to believe that Mr. Berleth violated § 152(6). The Court must report the violation.

### Conclusion

The Court will issue a Criminal Referral by forwarding a copy of this Memorandum Opinion to the United States Attorney for the Southern District of Texas and to the Federal Bureau of Investigation. The Court will also refer this matter to the United States District Court and to the State Bar of Texas with a recommendation that disciplinary proceedings be commenced against Mr. Berleth.

SIGNED **June 26, 2019.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE